UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RICK E. NEWMAN | : | CASE NO. C-1-01-0067 |
| Plaintiff | : | JUDGE HERMAN J. WEBER |
| -vs- | : | **DEFENDANT MESA, INC.'S RESPONSE TO DEFENDANT THE PROCTOR & GAMBLE COMPANY'S MOTION FOR SUMMARY JUDGMENT AGAINST MESA, INC.** |
| THE PROCTOR & GAMBLE COMPANY, et al. | : | |
| | : | |
| Defendants | | |

\* \* \* \* \* \* \*

Now comes Defendant, Mesa, Inc. (hereinafter "Mesa"), by and through counsel, and for its Response to Defendant the Proctor & Gamble Company's (hereinafter "P&G") Motion for Summary Judgment Against Mesa, Inc. (hereinafter "Motion"), submits the following Memorandum in Opposition. Pursuant to the Court's Scheduling Order a copy of P&G's Proposed Findings of Facts and Conclusions of Law has been highlighted according to the Court's instructions and attached hereto as Exhibit A.

Mesa submits P&G is not entitled to Summary Judgment.

Respectfully Submitted,

s/ John C. Scott_____
JOHN C. SCOTT, #0029518
JOSEPH T. MORDINO, #0065001
Attorneys for Defendant, Mesa, Inc.
FAULKNER & TEPE, LLP
2200 Fourth & Vine Tower
Cincinnati, Ohio 45202
(513) 421-7500

**MEMORANDUM**

I.  INTRODUCTION

Simply put, the facts in this case do not support P&G's Motion. P&G suggests, on page 3 of its Motion, "The only plausible inference that Pat Molloy could reach after his thorough investigation of the incident was that Gregg inexplicably opened a valve on the system and briefly allowed the gas to escape." While P&G might hold out hope that a jury may ultimately reach the conclusion that Gregg was so unintelligent and irresponsible that he would intentionally open a valve on a system containing unknown substances, the "plausible inference" submitted by P&G in its statement of facts is both wishful thinking and an obviously inappropriate basis for Summary Judgment. This is especially true in light of Mr. Gregg's repeated denials of any wrongdoing.

Plaintiff's injuries, if any, are due to P&G's sole negligence. Plaintiff's claims arise out of an alleged leak or release of sulfur dioxide from a system owned and controlled by P&G. Mesa's work had nothing to do with that system and there is not one shred of evidence that anyone from Mesa ever touched any part of the system. Any negligence associated with that system's failure is a result of the sole negligence of P&G either because of P&G's failure to warn all of the various contractors working on site of that system's existence or because of some failure of the system itself. Mesa is not obligated to indemnify P&G for P&G's sole negligence.

Another reason P&G is not entitled to summary judgment is because of P&G's willful spoliation of the key piece of evidence in this case: the sulfur dioxide system involved in the leak or release. While P&G might have everyone believe, as stated on page 7 of its Motion, "The testimony of Mr. Molloy establishes that Plaintiff alleged injuries were not the proximate result of any negligence on the part of P&G," that conclusion is, again, not appropriate in a Rule

2

56 setting. The self-serving statements of this P&G employee who was involved in the decision to destroy sulfur dioxide system prior to giving Mesa or its representatives an opportunity to examine that system constitutes spoliation. [1]

Finally, the indemnity sought by P&G is void because it is against public policy. P&G wants to be indemnified for its own negligence; Ohio law does not allow indemnification in the circumstances of this case.

II. ARGUMENT

### A. The facts do not support P&G's Motion.

No one will ever know what really happened to cause the leak or release of sulfur dioxide gas that occurred on March 17, 1999. While it may be most convenient to blame Mesa for the leak or release, P&G's position is dubious at best. P&G would have this Court believe that an experienced, safety-minded journeyman pipe fitter lacked so little sense on March 17, 1999, that he went around the compressor room opening and shutting valves. In addition to that speculation, this Court would have to believe that not only did Gregg have time to open valves on a system he did not know about or understand, but would also have to believe that after opening the valve Gregg had time to climb up a latter and then begin a descent down the ladder by the time Lloyd Stephenson returned from the very next room. Given Gregg's explicit denial of any wrongdoing whatsoever, P&G cannot seriously argue this Court should simply ignore his testimony. Pat Molloy's inferences and conclusions are simply inappropriate bases for a Motion for Summary Judgment. [2]

### B. P&G was solely negligent so there is no duty to indemnify.

---

[1] Mesa's arguments regard spoliation are more fully set forth in its Motion for Summary Judgment against the Proctor & Gamble Company.
[2] Molloy readily admits in his own deposition on page 136 that his theory about Gregg's activities while he was alone in the compressor room for approximately one minute are supposition.

P&G is not entitled to Summary Judgment because Plaintiff's claims arise out of P&G's sole negligence. P&G argues at page 8 of its Motion that because the contract provides that "this indemnity shall not apply to damages, injuries, or costs incident thereto found to be caused by the sole negligence of buyer" that Mesa has a duty to defend even if the right to indemnity does not exist. This interpretation of the first sentence of paragraph 5A is incorrect. Paragraph 5A is the indemnity clause. The first phrase of that sentence makes reference to an agreement to protect, defend, indemnity and save buyer harmless; all of those activities constitute the indemnity agreement. Unlike some agreements, there is no language that sets out a the circumstances under which there is a duty to defend, on the one hand, and a duty to indemnify, on the other hand. [3] In other words there are not two separate clauses which create separate obligations for Mesa.

P&G would have this Court find that the sulfur dioxide system had no problem. The basis for that finding would appear to be Molloy's supposition that Gregg opened the valve despite all his years of training and experience. However, it is at least as likely that there was some problem with this system that was under the control of P&G. Because P&G destroyed the system after learning of Plaintiff's injuries, no one will ever know what the true condition of the system was.

**C.     P&G's destruction of evidence constitutes spoliation, which entitles Mesa to inferences sufficient to defeat P&G's Motion for Summary Judgment.**

Mesa's Motion for Summary Judgment sets out its spoliation argument in detail. However, P&G's motion needs to be addressed so that the impact of its spoliation can be fully

---

[3] Another example of such a dichotomy can be found in the prior version of R.C.§2744.07(A)1 and (2) which set out separate standards for a political subdivision to defend or indemnify an employee.

4

understood. P&G's motion relies on Pat Molloy's supposition in an attempt to establish that the leak or release is not due to P&G's sole negligence. Neither Mesa nor its representatives ever had an opportunity to examine or test the sulfur dioxide system. In other words, the only people who evaluated the system had an interest in protecting P&G's coffers. As a result of the spoliation of evidence P&G is not entitled to any inferences in its favor. Because of the spoliation of evidence, Mesa is deserving of even more benefit than non-movants receive in a summary judgment setting.

**D. The indemnity agreement contained in paragraph 5A of the contract is void because it is against public policy.**

R.C.§2305.31 provides, in relevant part,

> A covenant, promise, agreement, or understanding in, or in connection with or collateral to, a contract or agreement relative to the design, planning, construction, alternation, repair, or maintenance of a building, structure, highway, road, appurtenance, and appliance, including moving, demolition, and excavating connected therewith, pursuant to which contract or agreement the promisee or its independent contractors, agents or employees has hired the promisor to perform work, purporting to indemnify the promisee, its independent contractors, agents, employees, or indemnities against liability for damages arising out of bodily injury to person or damages to property initiated or proximately caused by or resulted form the negligence of the promisee, its independent contractors, agents, employees or indemnities is against public policy and is void.

*__Kendall v. US Dismantling Company__*, 20 Ohio St.3d 61,45 N.E.2d 1047 (Nov. 27, 1985) held, in paragraph one of the syllabus, "R.C.§2305.31 prohibits indemnity agreements, in the construction-related contracts described therein whereby the promisor agrees to indemnify the promisee for damages caused by or resulting from the negligence of the promisee, regardless of whether such negligence is sole or concurrent." The purpose underlying R.C.§2305.31 is to require employers, such as P&G, to provide employees with a safe place to work. See *__Lamb v. Armco, Inc__*., 34 Ohio App.3d 288, 518 N.E.2d 53. (12th Dist. December 31, 1986) P&G failed to

5

provide its own employees, as well as its independent contractors, with a safe place to work because P&G failed to warn anyone of the existence of the sulfur dioxide system or to remove sulfur dioxide from the system so that it was safe.  R.C. §2305.31 applies to the case at bar because P&G hired MESA to perform construction work.  See **_Coulter v. Dayton Power & Light Co._**, 134 Ohio App.3d 620, 625, 731 N.E.2d 1172, 1176 (2nd Dist., July 30, 1999).

Plaintiff's Complaint at paragraph 21 states a claim of negligence against both P&G and Mesa.  "If a Plaintiff alleges negligence against a promisee, a promisor may not agree to undertake the defense costs the promisee incurs in defending itself against claims regarding its own negligence*."* **_Kemmeter v. McDaniel Backhoe Service_**, 89 Ohio St.3d. 409, 413, 732 N.E.2d 385, 388 (Aug. 9, 2000).  In Kemmeter, the owner Fibbe sought indemnification from the subcontractor Ruehl.  The Supreme Court of Ohio remanded the case to the trial court to determine whether the claims against Fibbe arose from activities under the contractual control of Ruehl.  If the activities were under the contractual control of Ruehl, then Ruehl would be responsible for Fibbe's attorney fees under the terms of the contract.  Id.  However, if Plaintiff's claims arose from activities under Fibbe's contractual control, then Fibbe would have to assume its own defense cost.  Id.  In the case at bar, it was P&G who had control over its sulfur dioxide system.  Mesa was installing a space heater that had nothing to do with the sulfur dioxide system.  Accordingly, indemnity would be against public policy.

III.  CONCLUSION

There are no facts which support P&G's claim that it is entitled to summary judgment.  If anything, P&G's spoliation of evidence creates inferences in favor of Mesa above and beyond what is ordinarily required in a summary judgment setting.  Based upon the facts in the case at bar, the contract does not require Mesa to indemnify P&G.  In fact, based upon the facts and

6

public policy considerations, such indemnity would be void because it is against public policy. P&G's Motion should be denied.

                                        Respectfully Submitted,

                                        s/ John C. Scott_____
                                        JOHN C. SCOTT, #0029518
                                        JOSEPH T. MORDINO, #0065001
                                        Attorneys for Defendant, Mesa, Inc.
                                        FAULKNER & TEPE, LLP
                                        2200 Fourth & Vine Tower
                                        Cincinnati, Ohio 45202
                                        (513) 421-7500

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon Beverly R. Storm, Esq., 600 Greenup Street, P.O. Box 472, Covington, KY 41012-0472, and Jeanette N. Dannenfelser, Esq., One Financial Way, Suite 312, Cincinnati, Ohio 45242, by regular U.S. Mail 15 day of October, 2003.

                                        s/ Joseph T. Mordino_____
                                        JOSEPH T. MORDINO

**EXHIBIT "A"**

FINDINGS OF FACT AND CONCLUSIONS OF LAW

**Conclusion of Law No. 1.** Summary judgment will be awarded "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. Civ. R 56.

**Conclusion of Law No. 2.** "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

**Conclusion of Law No. 3.** The interpretation of a written agreement is a matter of law for the court. *Alexander v. Buckeye Pipeline Co.,* 53 Ohio St.2d 241, syll. ¶1, 374 N.E.2d 146 (1978).

**Conclusion of Law No. 4** "If a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. Of Ohio*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984).

**Conclusion of Law No. 5**. To determine the nature of an indemnity relationship, the courts will look to the intent of the parties as expressed by the language used. *Cleveland Window Glass & Door Co. v. National Surety Co.,* 118 Ohio St. 414, syll., 161 N.E. 280 (1928).

**Conclusion of Law No. 6**. Where, as here, one party expressly and unambiguously agrees to indemnify another under specified circumstances and no exceptions apply, that party is obligated to indemnify the other under the terms of the agreement. *Allen v. Standard Oil Co.,* 2 Ohio St.3d 122, syll, ¶1, 443 N.E.2d 497 (1982).

**Conclusion of Law No. 7**.  The Ohio Supreme Court has held that an indemnitor's express agreement to indemnify an indemnitee for qualified legal expenses incurred is enforceable and not contrary to Ohio's public policy.  *Worth v. Aetna Casualty & Surety Co.,* 32 Ohio St.3d 238, 242, 513 N.E.2d 253 (1987).

**Conclusion of Law No. 8.**  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50.

**Finding of Fact No. 1.**  Plaintiff brought this suit against P&G and Mesa, alleging that: 1) P&G was negligent in permitting sulfur dioxide to remain on its Ivorydale site, 2) that Mesa employees were negligent in causing the release of the sulfur dioxide, and 3) as a result of their alleged joint and several negligence, Plaintiff suffered personal injury when he inhaled sulfur dioxide.

**Finding of Fact No. 2.**  On March 17, 1999, Mesa was operating under a Memorandum of Agreement with P&G.

**Finding of Fact No. 3**.  Paragraph 5.A of that Memorandum of Agreement provides:

> **Contractor [Mesa] agrees to protect, defend, indemnify and save Buyer [P&G] harmless from and all** judgments, orders, decrees, awards, **costs, expenses, including legal** fees, settlements, **and claims on account of** damage to property or **personal injury**, including death, **which may be sustained by** itself, its employees, or Buyer or Buyer's employees or **third persons, arising out of or in connection with services rendered hereunder** whether such loss, damage, injury or liability is contributed to by the negligence of Buyer or its employees (except that this indemnity shall not apply to damages, injuries, or the costs incident thereto found to be caused by the sole negligence of Buyer) and Contractor expressly acknowledges that it will indemnify Buyer for personal injury claims of Contractor's employees where Contractor is responsible to those employees for worker's compensation.

9

**Finding of Fact No. 4.**  On March 17, 1999, Mesa was installing a space heater in Building B of Building 179 at the Ivorydale facility.

**Finding of Fact No. 5.**  During the afternoon of March 17, 1999, the sulfur dioxide alarm, located in Building B, sounded, indicating a possible sulfur dioxide release.

**Finding of Fact No. 6.**  At the time of the suspected release, John Gregg, a Mesa employee, was the only individual in Building B.

**Finding of Fact No. 7.**  Following the release, the SO2 system was inspected at the supervision of Pat Molloy, Ivorydale's industrial health and safety manager.

**Finding of Fact No. 8.**  The system was completely examined within 24 hours after the incident, and no potential leak source could be detected by either smell or loss of pressurization in the system.

**Finding of Fact No. 9.**  Similarly, upon examination of the relief valves in the system, which remained intact, Mr. Molloy was able to conclude that an overpressurization of the system had not occurred.

**Finding of Fact No. 10.**  The instant action was brought by Mr. Newman "on account of . . . personal injury" to himself, a "third person."

**Finding of Fact No. 11.**  Plaintiff's action is one "arising out of or in connection with services rendered" under Mesa's contract with P&G.

**Conclusion of Law No. 9.**  The term "arising out of" does not mean "proximate cause of." *State Auto Mut. Ins. Co. v. Rainsberg* (Cuyahoga 1993), 86 Ohio App.3d 417, 421.

10

**Conclusion of Law No. 10.** Plaintiff's claims "arise out of" Mesa's work because that work was connected with the creation of a condition that caused the accident.

**Finding of Fact No. 11**. The testimony of Mr. Molloy establishes that Plaintiff's alleged injuries were not the proximate result of any negligence on the part of P&G.

**Finding of Fact No. 12.** The broad indemnification language entitles P&G to all benefits and protections under Paragraph 5.A of its Contract with Mesa, including without limitation a declaration that P&G is entitled to a defense against Plaintiff's action and indemnity for any settlement or judgment, together with costs and fees.

**Finding of Fact No. 13.** There is no dispute that P&G seasonably tendered defense of Plaintiff's claims to Mesa.

**Finding of Fact No. 14.** Mesa has refused to defend P&G.

**Finding of Fact No. 15.** P&G is entitled to a declaration that Mesa is obliged to defend P&G against Plaintiff's claims and to damages, attorney's fees, and costs stemming from the breach.

**Finding of Fact No. 16.** There is no evidence that any act or omission of P&G has been identified such that Mesa could credibly claim that Plaintiff was injured by the "sole negligence" of P&G.

**Finding of Fact No. 17.** Paragraph 5.A of the contract provides that "this **indemnity** shall not apply to damages, injuries, or the costs incident thereto found to be caused by the sole negligence of" P&G.

**Finding of Fact No. 18.** Mesa's duty to defend P&G in this suit attaches even if the right to indemnity does not.

**Finding of Fact No. 19.**  Mesa must defend and indemnify P&G in this lawsuit.