UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RICK E. NEWMAN, | : | Case No. 01-CV-67 |
| | : | |
| Plaintiff, | : | Judge Herman J. Weber |
| | : | |
| v. | : | **DEFENDANT THE PROCTER &** |
| | : | **GAMBLE COMPANY'S** |
| THE PROCTER & GAMBLE | : | **MEMORANDUM OPPOSING** |
| COMPANY, et al., | : | **MESA, INC.'S MOTION FOR** |
| | : | **SUMMARY JUDGMENT ON** |
| Defendants. | : | **P&G'S CROSS-CLAIM** |

**NOW COMES** Defendant, The Procter & Gamble Company ("P&G"), and hereby responds to Defendant Mesa, Inc.'s ("Mesa") motion for summary judgment on P&G's cross-claim. Mesa has provided no evidence which creates a genuine issue of material fact that it is obligated to defend and indemnify P&G under the Memorandum of Agreement ("MOA") which governed Mesa's work at P&G. Furthermore, despite its attempt to raise the specter of spoliation without moving for relief under Fed. R. 37, Mesa has not identified any concrete evidence that it was unable to obtain due to the removal of the system, has not shown that a P&G expert examined the system at its expense, and has not proven that P&G willfully destroyed the sulfur dioxide system in an effort to interfere with Mesa's defense. As such, Mesa is not entitled to any rebuttable presumption in its favor; summary judgment in favor of P&G is proper. This motion is supported by the attached Memorandum.

Respectfully submitted,

_____
Scott R. Thomas (0061040)
Jeanette N. Dannenfelser (0069614)
FURNIER & THOMAS, LLP
One Financial Way, Suite 312
Cincinnati, Ohio 45242
(513) 745-0400
Fax: (513) 792-6724
Attorneys for Defendant/Cross-claimant,
The Procter & Gamble Company

# MEMORANDUM IN OPPOSITION

## I.   INTRODUCTION

On March 17, 2003, Mesa was working for P&G at the Ivorydale facility pursuant to the MOA which required that Mesa indemnify and defend P&G from any litigation arising out of Mesa's work, except for situations in which the litigation arose due to the sole negligence of P&G. *See* MOA, p. 2, attached to P&G's motion for summary judgment at Exhibit A. Unless there is evidence in the record to suggest that the sulfur dioxide leak was the result of the negligence of P&G, and *only* P&G, Mesa must abide by its contractual obligations to defend and indemnify P&G in Plaintiff's suit. This litigation arose out of Mesa's work at P&G, and since the sulfur dioxide leak occurred in an area in which Mesa employees were present and over which Mesa had immediate control, the indemnification clause is triggered; whether or not Mesa is ultimately found negligent in causing the leak is irrelevant.

Mesa's curious allegation of spoliation in its summary judgment motion is likewise unfounded. When P&G first received Plaintiff's counsel's inquiry regarding the sulfur dioxide release, P&G notified Mesa. Therefore, Mesa had the same information that P&G did regarding the possibility of a lawsuit arising from the release. Despite this knowledge, Mesa did not ever request the opportunity to examine the system, or ask P&G to preserve the system for later evaluation. Moreover, Mesa has not moved for sanctions due to spoliation of evidence under Fed. R. 37. Even if Mesa had so moved, however, Mesa has not fulfilled its burden under Fed. R. 37 by: 1) identifying relevant material evidence that could have been gleaned from an examination of the system, 2) proving that a P&G expert had the opportunity to examine the sulfur dioxide system and Mesa's did not, and 3) that P&G intentionally destroyed evidence with the purpose of damaging Mesa's defense. Without carrying its burden of proof as to spoliation,

3

Mesa is not entitled to a rebuttable presumption that, had the sulfur dioxide system not been disassembled, it would have provided evidence in Mesa's favor. Mesa's motion for summary judgment against P&G's counterclaim must be denied.

## II. ARGUMENT

### A. THE STANDARD

On summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. Mesa has not produced any evidence that raises a genuine issue of material fact regarding its obligation to defend and indemnify P&G. Mesa's motion for summary judgment should be denied; summary judgment in favor of P&G is appropriate.

### B. MESA'S SUMMARY JUDGMENT MOTION MUST BE DENIED BECAUSE MESA'S CONTRACTUAL OBLIGATIONS TO DEFEND AND INDEMNIFY P&G DO NOT HINGE UPON A FINDING THAT MESA WAS NEGLIGENT.

The MOA is clear as to when Mesa's duty to defend and indemnify P&G arises:

> Contractor [Mesa] agrees to protect, defend, indemnify and save Buyer [P&G] harmless from any and all judgments, orders, decrees, awards, costs, expenses, including legal fees, settlements, and claims on account of damage to property or personal injury, including death, which may be sustained by itself, its employees, or Buyer or Buyer's employees or third persons, *arising out of or in connection with services rendered hereunder* whether such loss, damage, injury or liability is contributed to by the negligence of Buyer or its employees (except that this indemnity shall not apply to damages, injuries, or the costs incident thereto found to be caused by the sole negligence of Buyer) and Contractor expressly acknowledges that it will indemnify Buyer for personal injury claims of Contractor's employees where Contractor is responsible to those employees for worker's compensation.

4

Memorandum of Agreement, p. 2 and 3. The contract requires Mesa to defend and indemnify P&G in conflicts ***arising out of or in connection with*** the services Mesa provided for P&G. The language of the contract does not state that Mesa's obligation is triggered only upon a finding of evidence of negligence on Mesa's part. In fact, the *only* limitation on Mesa's obligation to defend and indemnify P&G is if it is proven that *P&G's sole negligence* caused the leak to occur. In support of its motion for summary judgment, Mesa has not offered and cannot point to any evidence in the record to support a conclusion that the release occurred due to P&G's sole negligence. The clear and unambiguous language of the MOA speaks for itself. *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio*, 15 Ohio St.3d 321, 322, 474 N.E.2d 271 (1984). Consequently, summary judgment in favor of Mesa is improper; on the contrary, no genuine issues of material fact exist and summary judgment should be granted in favor of P&G.

### C. MESA HAS NOT PRODUCED SUFFICIENT EVIDENCE TO SUPPORT SUMMARY JUDGMENT IN ITS FAVOR DUE TO SPOLIATION OF EVIDENCE.

Mesa has not pled a claim for spoliation. *See* Mesa's Answer to P&G's Cross-claim. Without asking for sanctions under Rule 37, Mesa urges this Court to grant summary judgment in its favor on the basis that, because P&G disassembled the sulfur dioxide system, evidence of P&G's sole negligence must have been spoliated. The spoliation of evidence occurs when a party formulates expert opinions through the examination of evidence and then destroys that evidence – either negligently or intentionally – to deny his opponent the opportunity to form his own opinions. *Cincinnati Ins. Co. v. General Motors Corp.*(Ottawa 1994), Ohio App. 6 Dist., 1994 WL 590566, Exhibit 3 at 5, n. 3 (attached hereto at Exhibit A). At the outset, the appropriate remedy for spoliation of evidence is a motion under Fed. R. 37. *Id.*

Assuming for the purposes of this motion that Mesa had moved for sanctions under Fed. R. 37, Mesa must make a *threshold showing* of spoliation, before *any* prejudice is presumed, by establishing:

> 1) that the evidence is relevant; 2) that the opposing party's expert had an opportunity to examine the unaltered evidence; and 3) that, even though the plaintiff was contemplating litigation against the defendant, this evidence was intentionally or negligently destroyed or altered without providing an opportunity for inspection by the defense.

*Cincinnati Ins. Co.*, 1994 WL 590566, Exhibit A at *3; *See also Nationwide Mutual Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999). Mesa has not met this threshold. Mesa has offered no evidence in defense of P&G's claim for defense and indemnification. Summary judgment cannot be granted in Mesa's favor.

### 1. Mesa has not produced any evidence to suggest that the Mesa could have gleaned evidence relevant to its defense from an examination of the sulfur dioxide system.

At this late date and in an effort to generate issues of fact, Mesa blindly claims that it was prejudiced by P&G's removal of the sulfur dioxide system prior to its examination by their expert. First, it is worth noting that when P&G received Plaintiff's counsel's inquiry regarding the sulfur dioxide leak in April 1999, P&G likewise notified Mesa. *Molloy depo.*, at 141:21-142:9. As such, Mesa was as aware as P&G regarding the possibility of a lawsuit arising from the release prior to the disassembly of the sulfur dioxide system, yet Mesa never requested the opportunity to examine, photograph, or otherwise evaluate the system. As a result, Mesa cannot now claim prejudice.

Mesa's recent interest in the sulfur dioxide system aside, however, Mesa has failed the first part of the Rule 37 test: Mesa has not identified the relevant concrete evidence that could have been recovered from the system in support of its defense. Similarly, Mesa has offered no

affidavits from any experts describing the tests, examinations or other investigations which, had Mesa had the opportunity to perform, could have produced evidence favorable to its position that it is not obligated to defend and indemnify P&G. In fact, Mesa has not specified any material evidence that it feels it has not had the opportunity to obtain which could have turned the tables in its favor with respect to P&G's claim. Without doing so, Mesa cannot meet its first obligation under Fed. R. 37. Summary judgment should be granted in favor of P&G on P&G's cross-claim.

### 2. P&G's expert did not examine the sulfur dioxide system.

Second, in order to meet its burden on spoliation under Fed. R. 37, Mesa must show that P&G's expert had the opportunity to examine the unaltered sulfur dioxide system. Mesa has offered no such evidence. In fact, P&G disassembled the sulfur dioxide system months before suit was ever filed, as part of a reorganization of Building 179. *Molloy depo.* at 65:23-66:12. P&G did not hire any expert or allow any expert to examine the sulfur dioxide system for potential causes of the sulfur dioxide release prior to its removal. The two P&G employees who looked at the sulfur dioxide system as part of P&G's investigation of the release, Pat Molloy and Joe Cruse, are serving only as lay witnesses in this case. No P&G expert was given any opportunity to examine the system at Mesa's expense. As a result, Mesa has failed to fulfill the second element of its burden under Fed. R. 37.

### 3. P&G did not negligently or intentionally destroy the sulfur dioxide system for the purpose of making that evidence unavailable to Mesa.

In order to fulfill the third element of its burden under Fed. R. 37, Mesa must show that P&G negligently or intentionally destroyed evidence to Mesa's detriment. The "intentional destruction of evidence" does not merely mean the willful or knowing removal of evidence; it

7

means that the evidence was removed *for the purpose of rendering it inaccessible or useless to the defendant in preparing its case*; in other words, spoiling it. *National Mut. Fire Ins. Co., supra,* 174 F.3d at 804 (emphasis added). Again, Mesa has failed to offer any evidence that P&G dismantled the system in an intentional effort to sabotage Mesa's defense that it is not obligated to defend and indemnify P&G.

Mesa was had the same notice as P&G regarding the remote possibility that Plaintiff would file suit. More importantly, P&G was not "contemplating litigation against" Mesa when the system was dismantled because P&G would only have a claim against Mesa if Newman brought an action against P&G; Newman did not file his action until after the system was dismantled. In addition, intentional destruction or alteration is not held to have occurred in circumstances where the parties communicated regarding the status of the evidence prior to its removal, as happened here when P&G notified Mesa in April of 1999 that P&G believed that the release was caused by a Mesa employee who opened a valve on the system. *White v. Ford Motor Co.*, 142 Ohio App. 3d 384, 387, 755 N.E.2d 954, 957 (Ohio App. 2001); *Hamilton Mut. Ins. Co. v. Ford Motor Co.*, 122 Ohio App.3d 611, 614, 702 N.E.2d 491, 493 (Ohio App. 1997). Moreover, P&G did in fact retain pertinent pieces of the system, a ball valve and the pressure gauge, which have been available for inspection by any party; despite this, Mesa has never requested an independent evaluation of these pieces. In Ohio, removal of physical evidence from a party's premises for close inspection and preservation does not constitute intentional destruction or alteration when the opposing party had the opportunity to inspect the evidence prior to removal. *National Mut. Fire Ins. Co., supra,* 174 F.3d at 805 (reversing district court's exclusion on basis that party offering testimony removed a wire harness from automobile allegedly causing accident). Mesa has never expressed interest in examining the sulfur dioxide

system, before or after suit was filed, and has not carried its burden of proof that P&G destroyed evidence with the intention of damaging Mesa's case.

Because Mesa has not offered any evidence to fulfill the three-fold test under Fed. Civ. R. 37, it has not carried its burden of proof as to spoliation. Therefore, Mesa cannot benefit from a rebuttable presumption that it has been prejudiced in its defense, and that any allegedly spoliated evidence would have been favorable to its defense. *Cincinnati Ins. Co., supra,* 1994 WL 590566, Case No. 94OT017, *4.

## III. CONCLUSION

The contract language speaks for itself. Furthermore, Mesa has not made a threshold showing of spoliation to entitle it to any presumption of prejudice. P&G requests a declaration from the Court that P&G is entitled to defense and indemnity from Mesa. A hearing on P&G's damages, including costs and attorney's fees, may then be set at a later date.

Respectfully submitted,

Scott R. Thomas (0061040)
Jeanette N. Dannenfelser (0069614)
FURNIER & THOMAS, LLP
One Financial Way, Suite 312
Cincinnati, Ohio 45242
(513) 745-0400
Fax: (513) 792-6724
Attorneys for Defendant/Cross-Claimant
The Procter & Gamble Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this 4th day of September 2003, via First Class U.S. Mail, postage prepaid, upon

John C. Scott, Esq.
Joseph Mordino, Esq.
FAULKNER & TEPE
2200 Fourth & Vine Tower
Cincinnati, Ohio 45202

Counsel for Mesa, Inc.

Beverly R. Storm, Esq.
David Zahniser, Esq.
ARNZEN, PARRY & WENTZ, P.S.C.
600 Greenup Street
P.O. Box 472
Covington, Kentucky 41012-0472

Counsel for Plaintiff

# EXHIBIT A

Not Reported in N.E.2d                                                                                                           Page 1
(Cite as: 1994 WL 590566 (Ohio App. 6 Dist.))

C
Only the Westlaw citation is currently available.

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio, Sixth District, Ottawa County.

CINCINNATI INSURANCE COMPANY, Appellant,
v.
GENERAL MOTORS CORPORATION, Appellee.

No. 94OT017.

Oct. 28, 1994.

OPINION AND JUDGMENT ENTRY

RESNICK

*1 This is an appeal from a summary judgment entered in favor of defendant- appellee, General Motors Corporation, by the Ottawa County Court of Common Pleas. Plaintiff-appellee, Cincinnati Insurance Company, appeals that judgment and asserts the following assignments of error:
"I. THE TRIAL COURT ERRED IN ITS JANUARY 27, 1994 JUDGMENT ENTRY GRANTING GENERAL MOTORS CORPORATION'S MOTION TO EXCLUDE THE TESTIMONY OF RICK SPENCER."
"II. THE TRIAL COURT ERRED IN ITS MARCH 9, 1994 JUDGMENT ENTRY GRANTING GENERAL MOTORS CORPORATION'S MOTION FOR SUMMARY JUDGMENT AFTER EXCLUDING CINCINNATI INSURANCE COMPANY'S EXPERT TESTIMONY."
"III. THE TRIAL COURT ERRED IN DETERMINING THAT GENERAL MOTORS CORPORATION'S MOTION TO EXCLUDE TESTIMONY AND SUBSEQUENT MOTION FOR SUMMARY JUDGMENT WERE NOT BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL [SIC]."

On November 25, 1986, the home of Geraldine and Angelo Incorvaia was heavily damaged by a fire. At that time, the Incorvaias had a homeowner's insurance policy with Cincinnati. Cincinnati paid their insureds $87,926.04 for damages resulting from the fire.

On March 2, 1988, Cincinnati, as a subrogee, filed an action against General Motors alleging that a defect in the 1981 Buick Le Sabre manufactured by General Motors and sold to Cincinnati's insureds caused the fire which damaged the Incorvaia residence. This case was voluntarily dismissed, pursuant to Civ.R. 41(A)(1), by Cincinnati in April 1991.

On December 19, 1991, Cincinnati commenced the present action. Again, it alleged that a manufacturing or design defect in the Incorvaias' motor vehicle was the cause of the fire that damaged its insureds' home. Specifically, Cincinnati claimed that the blower motor in the Buick overheated and caused combustible material to ignite in the vehicle's engine compartment.

General Motors answered and later filed a motion to preclude or limit the testimony of Cincinnati's expert witness, Rick D. Spencer. General Motors argued, among other things, that Cincinnati, in conjunction with Auto-Owners Insurance Company (the Incorvaias' motor vehicle insurer), destroyed evidence, the Buick Le Sabre, without providing them with an opportunity to examine the vehicle in its "after the fire" condition. General Motors urged that since it had been deprived of potentially favorable evidence, Cincinnati should be sanctioned for its "spoliation of evidence" by the preclusion or limitation of expert testimony as to the cause of the November 26, 1986 fire.

On January 4, 1994, the trial court granted General Motors' motion [FN1]. General Motors then filed a motion for summary judgment contending that, absent expert testimony, no genuine issue of material fact existed on the question of whether a design [FN2] or manufacturing defect, which caused the damaging fire, existed at the time the motor vehicle left the control of General Motors. In its response, Cincinnati conceded that, without expert testimony, it could not prove its case.

> FN1. Cincinnati subsequently filed a witness list containing the name of another expert who would testify as to the cause of the fire. The common pleas court ordered this expert's name to be stricken. We therefore presume that the lower court's ruling precluded any such expert testimony rather

than merely the testimony of Rick Spencer.

> FN2. While Cincinnati alleged a design defect in its complaint, it offered no evidence of such a defect. Rather, it pursued a manufacturing defect claim.

*2 On March 9, 1994, the trial court granted General Motors' motion for summary judgment.

In its first and second assignments of error, Cincinnati asserts, in essence, that the trial court erred in excluding any and all expert testimony as to the alleged defect in the blower motor and the cause of the fire. In its third assignment of error, Cincinnati argues that relitigation of the issues raised in General Motors' motion *in limine* and motion for summary judgment is barred by the doctrine of collateral estoppel.

We shall first address Cincinnati's third assignment of error.

The doctrine of "collateral estoppel", or issue preclusion, bars the relitigation, in a second action, of an issue that has been necessarily litigated and determined in a prior action which was based upon a different cause of action. *Whitehead v. General Telephone Co.* (1969), 20 Ohio St.2d 108, 112. The party asserting the preclusion must prove "that the identical issue was actually litigated, directly determined, and essential to the *judgment* in the prior action." *Goodson v. McDonough Power Equip., Inc.* (1983), 2 Ohio St.3d 193, 201.

In this case, Cincinnati maintains that General Motors filed a motion for summary judgment or, in the alternative, a motion to exclude expert testimony in the prior and subsequently dismissed action between these same parties. Cincinnati contends that the trial court denied these motions and General Motors is therefore barred from relitigating the issues raised therein. Cincinnati admits that, pursuant to Civ.R. 41(A)(1), it voluntarily dismissed its prior action against General Motors.

Civ.R. 41(A)(1) allows a plaintiff one opportunity to voluntarily dismiss his claims without prejudice. The plaintiff can refile these claims because he is not bound by a decision on the merits, *i.e.,* a final judgment. Where a cause of action is dismissed otherwise than upon the merits the parties are left in the same position as if the action had never been commenced and all preceding interlocutory orders are dissolved. *Central Mut. Ins. Co. v. Bradford-White Co.* (1987), 35 Ohio App.3d 26, 28. Thus, the denial of General Motors' motions in the prior action between these parties cannot serve as a basis for the application of the doctrine of collateral estoppel in this proceeding.

For this reason, Cincinnati's third assignment of error is found not well-taken.

Cincinnati's first and second assignments of error shall be considered together.

We must first note that the procedural aspects of this case are somewhat unusual and affect our standard of review. While Cincinnati is technically appealing from the grant of General Motors' motion for summary judgment, its arguments and assignments of error are directed to the trial court's grant of General Motors' motion *in limine*. Thus, the standard of review applied by this court shall be that applied when a trial court excludes evidence.

The admission or exclusion of evidence by a trial court will not be reversed absent a clear and prejudicial abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163. An abuse of discretion is more than an error in law or judgment; it connotes that a court's attitude in reaching its decision was arbitrary, unreasonable or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

*3 The undisputed facts pertinent to our disposition of Cincinnati's first and second assignments of error are as follows.

After the fire, Cincinnati and Auto-Owners hired Spencer to investigate its origin and cause. According to the deposition testimony of John Ash, an insurance representative for Auto-Owners, both Cincinnati and Auto-Owners were, at that time, deciding whether to pursue subrogation claims. Neither Cincinnati nor Auto-Owners informed General Motors of the investigation or of a potential claim.

Spencer examined the Incorvaia residence and their motor vehicle shortly after the fire. In his deposition testimony, Spencer, based upon personal observations, eliminated the possibility that the fire originated in the Incorvaia home. He then stated that his examination of the Buick led him to believe that the fire originated in the area of the blower motor. According to Spencer, the blower motor overheated and ignited fumes emitted from insulation in the air

duct. His testimony makes clear the fact that inspection of the entire automobile aided in the formation of this opinion.

Spencer photographed the Buick and surrounding area and removed the blower motor from that vehicle. Spencer provided a report of his findings to Cincinnati and Auto-Owners. The Buick, excluding the blow motor, was subsequently destroyed by Auto-Owners which paid its insureds' automobile claim and declined to pursue a subrogation claim against Cincinnati. General Motors was not notified of Spencer's findings or of the fact that most of the Buick had been demolished.

Following the commencement of this case, General Motors' expert witness, Frank Sonye, Jr., was provided with the photographs taken by Spencer and Spencer's report. He also examined the blower motor. Based on this information, Sonye was of the opinion that the fire did not start in the blower motor; however, Sonye averred that it would not be possible for him to determine the origin and cause of the fire without an inspection of the entire motor vehicle and, perhaps, an examination of the premises (carport) where the vehicle was parked on the day of the fire.

In product liability cases where evidence is intentionally or negligently "spoiled" or destroyed by a plaintiff or his expert before the defense has an opportunity to examine that evidence for alleged defects, a court may preclude any and all expert testimony as a sanction for "spoliation of evidence." [FN3] *Nally v. Volkswagon of America* (1989), 405 Mass. 191, 539 N.E.2d 1017; *Headley v. Chrysler Motor Corp.* (D.Mass.1991), 141 F.R.D. 362, 365; *American Family Insurance v. Village Pontiac-GMC, Inc.* (1992), 223 Ill.App.3d 624, 585 N.E.2d 1115, 1119; *Hirsch v. General Motors Corp.* (N.J.Super.L.1993), 628 A.2d 1108, 1130; *Travelers Insurance Co. v. Knight* (Dec. 21, 1992), Stark App. No.CA-8979, unreported. In such cases, the intent of the spoliator in destroying or altering evidence can be inferred from the surrounding circumstances. In other words, intent can be inferred from the fact that the evidence was destroyed prior to the commencement of any litigation against the defendant and there is only a potential for litigation. Therefore, the plaintiff is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action. *Hirsch v. General Motors Corp.*, 628 A.2d at 1130 (and the cases quoted therein).

FN3. An excellent analysis of the remedies available upon a claim of spoliation of evidence can be found in *Hirsch,* 628 A.2d 1108. Although the *Hirsch* case does not mention a motion *in limine* as a remedy for spoliation, this procedural vehicle has been employed in other cases as a means to sanction the destruction of relevant evidence. See, for example, *Headley, supra; Nally, supra; Columbian Rope Co. v. Todd* (Ind.App.1994), 631 N.E.2d 941. We are of the opinion that the better method to raise "spoliation of evidence" within the context of a civil case is for sanctions under Civ.R. 37. Our standard of review in such a case would, again, be an abuse of discretion. *Loynd v. Scott Molders, Inc.* (1990), 62 Ohio App.3d 888, paragraph two of the syllabus. Additionally, Ohio recognizes the tort of spoliation of evidence. *Smith v. Howard Johnson Co., Inc.* (1993), 67 Ohio St.3d 28.

*4 In *Bright v. Ford Motor Co.* (1991), 63 Ohio App.3d 256, the Montgomery County Court of Appeals found that the key factor to be considered in determining whether expert evidence is to be excluded is whether a reasonable possibility that the destroyed evidence would have been favorable to the defendants exists. The *Bright* court relied solely upon *Nally* for this proposition. Other cases addressing this same issue phrase the factor in terms of prejudice to the defendant's case. See, for example, *Headley v. Chrysler Motor Corp.,* 141 F.R.D. at 365; *Hirsch v. General Motors Corp.,* 628 A.2d 1108. In any event, the *Nally* court itself made clear the fact that the degree of prejudice to the defendant was the major consideration in deciding whether to preclude any or all of the plaintiff's expert evidence as to his or her observations of the allegedly defective product. *Id.* at paragraph two of the syllabus. Accordingly, we conclude that when, in a product liability case, a defendant alleges that a plaintiff has destroyed a relevant piece of evidence, the trial court must determine the degree of prejudice to the defendant and impose a sanction commensurate with that degree of prejudice.

In addition, the *Bright* court determined that a defendant in a product liability case enjoys a rebuttable presumption that it was prejudiced by the destruction of relevant evidence. Therefore, the plaintiff bears the burden of persuading (burden of persuasion is on the spoliator) a trial court that there is no reasonable possibility that lack of access to the unaltered or intact product deprived the defendant of favorable evidence otherwise unobtainable, that is,

that the defendant was not prejudiced. *Id.* at 260. See, also, *Travelers Insurance Co. v. Knight, supra.* Of course, the defendant must first establish (1) that the evidence is relevant; (2) that the plaintiff's expert had an opportunity to examine the unaltered evidence; and (3) that, even though the plaintiff was contemplating litigation against the defendant, this evidence was intentionally or negligently destroyed or altered without providing an opportunity for inspection by the defense. *Hirsch v. General Motors Corp.*, 628 A.2d at 1118. We agree with this approach.

In the present case, General Motors demonstrated that the allegedly defective product was altered and destroyed after a full examination by Cincinnati's expert without notice to General Motors and prior to the commencement of any litigation. It also showed, through Sonye's testimony, that its expert could not determine the origin or cause of the fire absent the destroyed evidence. Consequently, a rebuttable presumption of prejudice to General Motors arose.

To rebut this presumption, Cincinnati argued in the trial court and now argues on appeal that the purported defective part was preserved and that photographs taken by Spencer were sufficient for the basis of an opinion by Sonye. Thus, the testimony and evidence of Spencer should not have been barred.

*5 In *American Family Insurance Co.*, a subrogee home owner's insurer brought a product liability action against the seller of an allegedly defective motor vehicle. American argued that a short circuit in the wiring of the vehicle resulted in a fire which caused damage to its insureds' residence. Prior to the commencement of litigation, American had its expert examine and photograph the motor vehicle; the expert removed the "defective" wires from that vehicle. Subsequently, the automobile insurer of the vehicle had it destroyed.

During the litigation between American and the seller of the vehicle, the seller requested that all expert evidence obtained by American through its prelitigation inspection be excluded from evidence as a sanction for destruction of the motor vehicle. American contended that the evidence was not destroyed because wires from the vehicle and photographs of the vehicle were preserved. The *American* court held:

> "Although the two wires from the car were saved and plaintiffs have photographs of the car and other damaged property, defendants were unable to inspect, as plaintiffs' experts were, the most important evidence because of plaintiffs' actions. Plaintiffs were the individuals with first-hand knowledge of the physical evidence which is far more probative under these circumstances in determining whether the vehicle caused the fire than photographs and two wires taken from the trunk area. The physical object itself in the precise condition immediately after an accident may be far more instructive and persuasive to a jury than oral or photograph descriptions. * * * As a matter of sound public policy, an expert should not be permitted intentionally or negligently to destroy such evidence and then substitute his or her own description of it." *American Family Insurance Co.*, 585 N.E.2d at 1118.

For the reasons stated in *American*, we conclude that the trial court did not err in rejecting Cincinnati's contention that any prejudice to General Motors was obviated by Spencer's photographs and his preservation of the blower motor.

Cincinnati further asserts that the trial court erred in precluding any and all expert testimony as to the origin and cause of the fire. Cincinnati reasons that its new proposed expert and General Motors' expert could each base his respective opinion upon the photographs and an inspection of the blower motor. Consequently, General Motors was not **prejudiced** by the **spoliation** of evidence.

This assertion was found meritless in both *American Family Insurance Co.*, 585 A.2d at 1119, and in *Headley*. In *Headley v. Chrysler Motor Corp.*, 141 F.R.D. at 366, the court found that the plaintiffs' "two tie all tie" analysis was incorrect. The court concluded the fact that the plaintiffs' destruction of evidence prejudiced their own case does not cancel out the prejudice to the defendant. More importantly, the court found that the act of the plaintiffs would reduce the trial to a true "battle of the experts" with the jury deciding the case on the testimony of the highest scoring expert rather than the actual condition of the allegedly defective product. *Id.* We find the reasoning in *Headley* persuasive and, hereby, find Cincinnati's assertion to be without merit.

*6 Based upon the foregoing, this court finds that Cincinnati failed to rebut the presumption of prejudice. Accordingly, the trial court did not abuse its discretion in precluding any and all of Cincinnati's expert evidence as to the origin and cause of the fire. Cincinnati's first and second assignments of error are found not well-taken.

Through our independent review of the record and

by Cincinnati's own admission, we find no genuine issue of material fact remains for trial in this case on the issue of whether a defect existed in the Buick Le Sabre and whether that defect caused the fire which damaged the Incorvaia residence. See Civ.R. 56(C). Thus, Cincinnati did not offer any evidence of one or more of the essential elements of its case. See *Lonzrick v. Republic Steel Corp.* (1966), 6 Ohio St.2d 227 (elements of a cause of action based upon the theory of strict product liability). Therefore, the trial court did not err in granting summary judgment as a matter of law. The judgment of the Ottawa County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to Cincinnati Insurance Company.

*JUDGMENT AFFIRMED.*

ABOOD, P.J., and HANDWORK and RESNICK, JJ., concur.

1994 WL 590566 (Ohio App. 6 Dist.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works