UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **RICK E. NEWMAN,** | : | Case No. C-1-01 0067 |
| | : | |
| Plaintiff, | : | Judge Herman J. Weber |
| | : | |
| v. | : | PLAINTIFF RICK E. NEWMAN'S |
| | : | RESPONSE TO DEFENDANT |
| | : | MESA, INC.'S PROPOSED |
| **THE PROCTER & GAMBLE** | : | FINDINGS OF FACT AND |
| **COMPANY, ET AL.,** | : | CONCLUSIONS OF LAW |
| | : | |
| Defendants. | : | |

_____

Plaintiff Rick E. Newman ("Mr. Newman") responds as follows to the proposed findings of fact and conclusions of law submitted Defendant Mesa, Inc.:

**PROPOSED FINDINGS OF FACT**

1. On March 17, 199, Plaintiff Rick Edward Newman (hereinafter, "Newman") was an employee of Viox Company, which had been hired as an independent contractor by the Procter & Gamble Company (hereinafter, "P&G").

2. John T. Gregg (hereinafter, "Gregg") and Lloyd Stephenson (hereinafter, "Stephenson") were working together in the compressor room of Building 179 on March 17, 1999 when a substance believed to be sulfur dioxide leaked or was released from a P&G system that contained sulfur dioxide.

3. Neither Gregg, Stephenson, Mesa, nor the employees of Viox were informed by P&G that sulfur dioxide was present in the facility.

4. There is no way that the valves in the compressor room were opened accidentally.

5. There is no evidence that Gregg or any other Mesa employee intentionally opened a valve.

6. On May 4, 1999, P&G received a request from an attorney representing Newman.

7. The sulfur dioxide lines were removed by P&G personnel in June or July 1999.

8. No other parties to this litigation were given the opportunity to examine or test the sulfur dioxide system or have it examined or tested on their behalf.

## PROPOSED CONCLUSIONS OF LAW

1. Newman has failed to produce evidence which creates a genuine issue of material fact to support his allegations that Mesa was negligent.

2. P&G has failed to produce evidence which creates a genuine issue of material fact to support its allegations that Mesa was negligent. Any negligence regarding the leak or release of sulfur dioxide gas is solely attributable to P&G.

3. Based upon the testimony of P&G's own employee witnesses, it is apparent that there is no way Gregg or any other Mesa employee could have accidentally opened a ball valve on the sulfur dioxide system.

4. Molloy's suppositions fail to create a genuine issue of material fact regarding Gregg's actions in the compressor room because there is no evidence that Gregg intentionally opened a ball valve.

5. P&G's willful destruction of the sulfur dioxide system after having received notice from legal representatives for Newman constitutes spoliation. Accordingly, Mesa is entitled to a presumption in its favor that there was some defect in the sulfur dioxide system which

caused the leak or release of sulfur dioxide gas.

                              Respectfully submitted,

                              ARNZEN & WENTZ, P.S.C.


BY: s/ Mary K. Molloy
     MARY K. MOLLOY (0003067)
     MARK G. ARNZEN
     BEVERLY R. STORM
     600 Greenup Street
     P.O. Box 472
     Covington, Kentucky 41012-0472
     (859) 431-6100

## **CERTIFICATION OF SERVICE**

     I hereby certify that a copy of the above was mailed via U.S. mail, postage prepaid, this 8th day of September 2003 to the following:

John C. Scott, Esq.
Joe Mordino, Esq.
Faulkner & Tepe, LLP
2200 Fourth & Vine Street
5 West Fourth Street
Cincinnati, Ohio 45202

Scott R. Thomas, Esq.
Jeanette N. Dannenfelser, Esq.
Furnier & Thomas, LLP
One Financial Way
Suite 312
Cincinnati, Ohio 45242


                              s/ Mary K. Molloy