UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **RICK E. NEWMAN** | : | Case No. 01-CV-67 |
| Plaintiff | : | Judge Herman J. Weber |
| -vs- | : | PLAINTIFF RICK E. NEWMAN'S COUNTER STATEMANT OF |
| **THE PROCTOR & GAMBLE COMPANY, et al**. | : | PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW |
| | : | |
| **Defendants** | | |

Plaintiff Rick E. Newman ("Mr. Newman") submits the following Proposed Findings of Fact and Conclusions of Law in support of his Memorandum in Opposition to Defendants' Motions for Summary Judgment:

## MR. NEWMAN'S PROPOSED FINDINGS OF FACT

1. On March 17, 1999, Mr. Newman was exposed to, and inhaled, sulfur dioxide gas while he was insulating a soap tank located in Building 179 at Defendant Procter & Gamble Company's ("P&G") Ivorydale facility in St. Bernard, Ohio.

2. Sulfur dioxide is a compound that is known to be hazardous to humans.

3. At the time of his exposure to the sulfur dioxide gas, Mr. Newman was employed by Viox Services, Inc., an independent contractor hired by P&G.

4. Neither Viox nor Mr. Newman knew there was sulfur dioxide gas present in the pipes of Building 179; P&G had neither notified Viox nor Mr. Newman that there was sulfur dioxide gas present in the pipes of Building 179, nor had P&G posted warnings that sulfur dioxide gas was present in the pipes of Building 179.

5. Defendant Mesa, Inc. ("Mesa") was another independent contractor hired by P&G, and at the time of Mr. Newman's exposure to the sulfur dioxide gas on March 17, 1999, Mesa employees were installing a unit heater in Building 179.

6. On March 18, 1999, the day after he was exposed to the sulfur dioxide gas, Mr. Newman was sent to the emergency room at Bethesda Care in Norwood, Ohio because he had trouble breathing, a bad cough, a congested chest, and a sore throat; at Bethesda Care, Mr. Newman was diagnosed with chemical pneumonitis (which is an inflammation of the respiratory tract tissues due to chemical inhalation) and was treated with steroids.

7. Mr. Newman's exposure to the sulfur dioxide gas injured him, subsequently causing atrial fibrillation - an uncommon and incurable heart condition - which Mr. Newman did not have prior to March 17, 1999.

8. Between March 17, 1999 and October 2001, Mr. Newman has had four documented episodes of atrial fibrillation; since October 2001, several more episodes of atrial fibrillation and/or irregular heart activity have been documented.

9. Future episodes of atrial fibrillation are expected.

10. Every episode of atrial fibrillation exposes Mr. Newman to a risk of stroke or embolus going somewhere else in his body which could cause further serious injury or death.

11. Two experts testifying on behalf of Mr. Newman, Dr. Paul D. Hirsh and Roger L. Wabeke, have opined that it is more likely than not that Mr. Newman's injuries were the result of his exposure to sulfur dioxide gas.

12. Dr. Hirsh's conclusion was based on the fact that he could not detect - after examining Mr. Newman and reviewing his medical history and symptoms - any other cause for atrial fibrillation in Mr. Newman, such as hypertension, alcoholism, hyperthyroidism, nervous

system problems, asthma, chronic lung conditions, structural heart disease, coronary disease, excessive use of stimulants, or that Mr. Newman's atrial fibrillation episodes were caused by exercise or stress.

13. Dr. Hirsh's method of diagnosing the cause of Mr. Newman's atrial fibrillation episodes is known as "differential diagnosis."

14. P&G and Mesa dispute which one of them was responsible for allowing the sulfur dioxide gas to be released in Building 179.

15. The Court previously denied P&G's prior motion for summary judgment which alleged that P&G did not owe a duty of care to Mr. Newman under premises liability law.

## MR. NEWMAN'S PROPOSED CONCLUSIONS OF LAW

1. In moving for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of' the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

2. The Sixth Circuit has noted that a party may move for summary judgment if it can demonstrate that the non-moving party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

3. In responding to a motion for summary judgment, Rule 56(e) of the Federal Rules of Civil Procedure "requires the non-moving party to go beyond the pleadings," and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324.

4. Summary judgment shall be denied "if there are. . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted).

5. "Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party." United States v. Atlas Lederer Co., 97 F.Supp.2d 834, 835 (S.D. Ohio 2000) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).

6. "If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder." Atlas Lederer, 97 F.Supp.2d at 835 (citing 10A Charles Alan Wright, et al., Federal Practice and Procedure § 2726).

7. Mesa, as an independent contractor, owed Mr. Newman, an employee of another independent contractor working on the same premises, a duty of care not to cause him injury. See McGeary v. Reed, 105 Ohio App. 111, 114, 151 N.E.2d 789, 793 (Ohio App. 1957).

8. A factual determination must be made as to whether Mesa breached its duty, thus making summary judgment inappropriate. See Commerce & Industry Ins. Co. v. City of Toledo, 45 Ohio St.3d 96, 98, 543 N.E.2d 1188, 1192 (Ohio 1989); Cogar v. Scheetz Construction Co., C.A. No. 18501, 1998 Ohio App. LEAS 81, *5 (Jan. 14, 1998).

9. Mr. Newman has presented a prima facie case of negligence against P&G, specifically as to causation based on probability, thus making summary judgment inappropriate. See Stinson v. England, 69 Ohio St.3d 451, 455, 633 N.E.2d 532, 537 (Ohio 1994).

10. Mr. Newman's expert testimony on causation is sufficiently reliable under the standards stated in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.,</u> 509 U.S. 579 (1993).

11. The Sixth Circuit noted that "[i]n Daubert, the Supreme Court provided extensive guidance for the application of the dictates of [Evidence] Rule 702. The Court explained that Rule 702 displays a 'liberal thrust' with the 'general approach of relaxing the traditional barriers to 'opinion testimony.'" <u>Jahn v. Equine Services, PSC,</u> 233 F.3d 382, 388(6th Cir. 2000) (citing <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.,</u> 509 U.S. 579, 588 (1993).

12. "Differential diagnosis," the method employed by Dr. Hirsh in diagnosing the cause of Mr. Newman's atrial fibrillation episodes, fulfills the Daubert standards in the Sixth Circuit, and is admissible. See <u>Hardyman v. Norfolk & Western Railway Co.</u>, 243 F.3d 255, 260 (6th Cir. 2001); <u>see also Westberry v. Gislaved Gummi AB</u>, 178 F.3d 257 (4th Cir. 1999).