UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RICK E. NEWMAN | : | CASE NO. C-1-01-0067 |
| Plaintiff | : | JUDGE HERMAN J. WEBER |
| -vs- | : | |
| THE PROCTOR & GAMBLE COMPANY, et al. | : | |
| | : | **DEFENDANT MESA INC.'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| Defendant | : | |
| | : | |

**********

Now comes Defendant, Mesa, Inc. (hereinafter "Mesa"), by counsel, and hereby submits its Reply Memorandum in Support of Its Motion for Summary Judgment. The attached Memorandum is a Reply to both Plaintiff Rick E. Newman's Memorandum in Opposition to Defendants' Motions for Summary Judgment (hereinafter "Newman's Memo") and Defendant the Proctor & Gamble Company's Memorandum Opposing Mesa, Inc.'s Motion for Summary Judgment on P&G's Cross-claim (hereinafter "P&G's Memo").

Pursuant to the Court's Amended Scheduling Order, Mesa has attached hereto as Exhibits A and B, copies of the Counter Statement of Findings of Fact and Conclusions of Law submitted by Newman and P&G, respectively.[1] Both Newman's Memo and P&G's Memo fail to present a factual and/or legal basis for denying Mesa's Motion for Summary Judgment.

---

[1] Mesa has not highlighted any facts in Newman's Counter Statement that address issues raised in P&G's Motion for Summary Judgment against Newman.

Respectfully Submitted,

_____
JOHN C. SCOTT, #0029518
JOSEPH T. MORDINO, #0065001
Attorneys for Defendant, Mesa, Inc.
FAULKNER & TEPE, LLP
2200 Fourth & Vine Tower
Cincinnati, Ohio 45202
(513) 421-7500

**MEMORANDUM**

I. INTRODUCTION

There is no genuine issue of material fact regarding the actions of Mesa's employees on March 17, 1999. Contrary to the assertion contained on page 3 of Newman's Memo, Mesa does not contest for purposes of its Motion for Summary Judgment whether it owed Mr. Newman a duty of care. The sole basis for Mesa's Motion for Summary Judgment against Newman is that there is absolutely no evidence of a breach of duty by Mesa.

As to P&G's assertions, there is no evidence in the record of Mesa's negligence causing a leak or release of sulfur dioxide. To the contrary, any leak or release was due to the sole negligence of P&G.

II. EVIDENCE

    **A.    The evidence, or lack thereof, regarding Mesa's actions on March 17, 1999.**

Curiously, both Newman and P&G underlined in red paragraphs 4 and 5 of Mesa's Proposed Findings of Fact. Paragraph 4 states "There is no way that the valves in the compressor room were opened accidentally." Paragraph 5 states there is no evidence that Gregg or any other Mesa employee intentionally opened a valve." However, neither Newman nor P&G can point to any evidence in the record that a valve in the compressor room was opened either accidentally or intentionally. The evidence is clear there is no way the valves in the compressor room were opened accidentally. P&G's own witness,

2

Patrick Molloy, concedes this is true both because of the location of the valves and because of the way the valves function; the valves include mechanisms that must be released before the valves can be turned. (Molloy depo., pg. 47 - 49) No deponent even suggested that one of these valves could be opened by incidental contact such as bumping a valve, brushing up against a valve, or any other such activity. To the contrary, the evidence in the record is clear that an affirmative act is required to open one of the ball valves.

Given that uncontroverted evidence, Newman and P&G find themselves in a situation where they must prove that a Mesa employee intentionally opened one of the valves on the sulfur dioxide system. Neither party can do this. First, John Gregg has consistently denied opening a valve. (Gregg depo. pg. 46; Molloy depo. pg. 64) Second, Gregg did not have time to open a valve, close a valve, go up a ladder, and then start climbing back down the ladder. (Stephenson depo. pg. 38 and 85)

In order to successfully oppose Mesa's Motion for Summary Judgment, Newman must set forth specific facts showing that there is a genuine issue for trial. **Anderson v. Lobby,** 477 U.S. 242, 248 (1986). There is no genuine issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 249. If the evidence is merely colorable, **Dombrowski v. Eastland** 387 U.S. 82, 84 (1967), or is not significantly probative, **Citis Serv.,** 391 U.S. at 290, judgment may be granted**. Id.** Simply put, neither Newman nor P&G have any evidence whatsoever of negligence by Mesa. Patrick Molloy's unsubstantiated speculation and finger pointing in an effort to shift blame from P&G is not even sufficient to create an inference. Ohio Jury Instructions section 5. 10 defines an inference as follows:

> 5. INFERENCE. To infer, or to make an inference, is to reach a reasonable (conclusion) (deduction) of fact which you may, but are not required to, make from other facts which you find have been **established by direct evidence.** Whether an inference is made rests entirely with you. **(Emphasis added)**

There is an absence of direct evidence of negligence by Mesa. The most Newman or P&G can prove is that Gregg was apparently in the wrong place at the wrong time. This is especially true given

3

that he, and not Newman, was apparently in the room where the release occurred. Presumably Gregg was exposed to more sulfur dioxide than anyone on that day.

Newman quite correctly points out on pg. 5 of his Memo "[i]f the parties present conflicting evidence, a Court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the finder of fact." However, that rule of law is inapplicable to the case at bar. Here, there is no conflicting evidence. Here, there is no reason for a credibility contest. Here, despite efforts to muddy the waters, the evidence is clear and the evidence favors Mesa. [2]

Newman rather weakly suggests on page 6 of his Memo there is sufficient evidence that Mesa breached its duty of care since P&G concluded that Mesa's employees caused the sulfur dioxide gas to be released and cites generally to Molloy's deposition from pages 21 through 46. Molloy is not an expert, so he should not be permitted to offer any opinions regarding the cause of the leak or release. Given that even Molloy has conceded in his deposition that his story is mere supposition, his deposition is not competent evidence as required by Rule 56(E) to establish a genuine issue of material fact.

### B. Mesa has no duty to indemnify P&G.

P&G has a problem. After failing to notify any contractors that sulfur dioxide was present at its facility, there was a leak or release of sulfur dioxide followed by a claim for injury made by an employee of one of the contractors. This Court has already determined there are issues of fact in this case which preclude the Court from determining as a matter of law that Plaintiff was engaged in inherently dangerous work and that P&G did not breach a duty which it owed to Plaintiff. (Order filed December

---

[2] Newman suggests in his memo at pg. 3 "The main issue in dispute is between the two Defendants, P&G and Mesa, as to who was responsible for allowing the sulfur dioxide gas to be released in building 179. Mesa respectfully submits that there is more in dispute in this litigation. However, for purposes for filing a Motion for Summary Judgment against Newman, Mesa took a limited approach. Mesa also contests the causation, nature, extent, and duration of Plaintiff's claimed damages.

21, 2001, doc. 27). The only party to this lawsuit that had control over the sulfur dioxide system was P&G. In fact, the only party to this lawsuit that even knew of the system's existence prior to the release was P&G. After P&G's failure to provide a safe work site for independent contractors, P&G resorted to finger pointing and blame shifting.

P&G suggests in its Memo on page 3 this litigation arose out of Mesa's work. The sulfur dioxide system which is alleged to have caused Newman's alleged injury was in the exclusive control of P&G. The leak or release would not have happened but for some negligence on the part of P&G. Newman's injuries, if any, are attributable to the sole negligence of P&G.  P&G was solely negligent by virtue of its failure to inform any independent contractors that the sulfur dioxide system existed. P&G was solely negligent because that system failed for some reason. P&G may be facing a res ipsa loquitur instruction if this matter goes to trial. As a result,

P&G desperately clings to Molloy's fantastic speculation regarding Gregg's activities on March 17,1999.

There is no evidence whatsoever that Mesa was negligent. P&G cannot present evidence of negligence by Mesa. Negligence lies with P&G.

Until depositions in this case were taken, Mesa was never privy to Pat Molloy's suppositions regarding how the leak or release occurred. Mesa can show that spoliation occurred. First, it is undisputed that the condition of the sulfur dioxide system is relevant. Second, P&G had the ability to evaluate the system and reach its own unsubstantiated conclusion as to how the release or leak occurred. Third, it is clear Plaintiff was contemplating litigation against P&G and the evidence, i.e. the sulfur dioxide system, was intentionally or negligently destroyed without providing an opportunity for inspection by Mesa. No expert testimony is needed here. It is obvious that the destruction of the system robbed Mesa of the opportunity to evaluate it.

In the alternative, Mesa submits P&G has failed to identify any expert witness who can opine regarding the causation of the leak or release. Patrick Molloy, the only witness who has offered "opinions" regarding how the leak or release supposedly occurred, was not identified as an expert and has not provided a report in compliance with this Court's scheduling orders.

Under Ohio law, a landowner may be liable to a "frequenter" injured as a result of a hazardous condition of the property which liability is not substantially different from that imposed to common law. **Westwood v. Thriftyboy Supermarkets, Inc.** 278 N.E. 673, 674 (Ohio 1972) Newman is no doubt, a "frequenter" as contemplated by the case law and Ohio Revised Code §4101.11 which states:

> "Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment, safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

This statute has been construed to provide that where an independent contractor and its employee perform work upon the premises of the owner, unaware and uninformed as to a dangerous condition on the premises created by the owner or of which the owner had knowledge, an employee may recover damages for injury caused by the condition on the grounds that the owner is chargeable with negligence in failing to remove the dangerous condition or to give notice of warning of its existence. **Wenman v. The East Ohio Gas Co.,** 113 N.E.2d 629 (Ohio 1953). As already discussed above, the Court cannot determine as a matter of law that Plaintiff was engaged in inherently dangerous work, which would create an exception to the rule.

Newman was insulating a tank *that* had nothing to do with the sulfur dioxide system. Mesa was putting in a space heater *that* had nothing to do with the sulfur dioxide system. P&G failed to remove the dangerous condition. P&G failed to warn of its existence.

6

The evidence in the record shows Newman's claimed injuries are due to the sole negligence of P&G. Accordingly, P&G is not entitled to indemnity.

III. CONCLUSION.

There is no evidence of any negligence on the part of Mesa. By way of contrast, P&G had a system on site containing dangerous sulfur dioxide gas and failed to notify anyone of the presence of that system or the gas in it. Something went wrong that day, but because of P&G's destruction of that sulfur dioxide system, no one will ever know what really happened. P&G had exclusive control over that system at all times relevant to this litigation. Newman's claims arise out of P&G's sole negligence. Accordingly, there are no genuine issues of material fact and Mesa is entitled to judgment in its favor as a matter of law.

Respectfully Submitted,

s/ John C. Scott_____
JOHN C. SCOTT, #0029518
JOSEPH T. MORDINO, #0065001
Attorneys for Defendant, Mesa, Inc.
FAULKNER & TEPE, LLP
2200 Fourth & Vine Tower
Cincinnati, Ohio 45202
(513) 421-7500

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document has been served upon Beverly R. Storm, Esq., 600 Greenup Street, P.O. Box 472, Covington, KY 41012-0472, and Jeanette N. Dannenfelser, Esq., One Financial Way, Suite 312, Cincinnati, Ohio 45242, by regular U.S. Mail this 14 day of October, 2003.

s/ John C. Scott_____
JOHN C. SCOTT