UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **RICK E. NEWMAN** | : | Case No. 01-CV-67 |
| Plaintiff | : | Judge Herman J. Weber |
| -vs- | : | DEFENDANT THE PROCTER & GAMBLE COMPANY'S COUNTER STATEMENT OF FINDINGS OF FACT AND CONCLUSIONS OF LAW AGAINST MESA, INC. |
| **THE PROCTOR & GAMBLE COMPANY, et al.** | : | |
| | : | |
| **Defendants** | | |

NOW COMES Defendant, The Procter & Gamble Company ("P&G"), and, pursuant to this Court's scheduling order, hereby submits its Counter Statement of Findings of Fact and Conclusions of Law against Mesa, Inc:

**PROPOSED FINDINGS OF FACT**

1. On March 17, 1999, John T. Gregg ("Gregg") and Lloyd Stephenson ("Stephenson") were employees of Mesa, Inc., which had been hired by P&G as an independent contractor to perform various services at P&G's Ivorydale facility.

2. On that date, Gregg and Stephenson were working together, installing a heater in the compressor room of Building 179.

3. At that time, no other individuals were in the compressor room.

4. While installing the space heater, Stephenson left the room to retrieve a tool.

5. While Gregg was working in the compressor room alone, sulfur dioxide in equipment in the compressor room was released.

6. Gregg and Stephenson were authorized only to work on installing the space heater in the compressor room.

7. Gregg and Stephenson's project did not involve any part of the sulfur dioxide system.

8. Gregg and Stephenson were not authorized to touch, turn on, or otherwise operate any other pipes, valves, or systems in the compressor room.

9. A valve on the sulfur dioxide system could have been opened intentionally or inadvertently.

10. There is no evidence that the sulfur dioxide system leaked or released sulfur dioxide on its own without human intervention.

11. P&G received a request for information regarding the leak from Plaintiff's counsel on April 27, 1999.

12. P&G notified Mesa of Plaintiff's counsel's letter, and of P&G's belief that Gregg had opened a valve to cause the release.

13. P&G had no reason to believe that any legitimate litigation would arise from the events of March 17, 1999.

14. Mesa did not indicate to P&G that it anticipated litigation or ask to inspect the sulfur dioxide system at any time before it was dismantled by P&G.

15. The sulfur dioxide system was dismantled to make room for other systems in Building 179 long before this lawsuit was filed.

16. No expert to this litigation, hired by P&G, Mesa, or otherwise, has ever evaluated or examined any portion of the sulfur dioxide system that is now unavailable for purposes of litigation defense.

## PROPOSED CONCLUSIONS OF LAW

1. Mesa is required to defend and indemnify P&G under the Memorandum of Agreement governing its work for P&G, regardless of any finding of negligence on Mesa's part.

2. Mesa has produced no evidence that supports a finding that the sulfur dioxide release was due to P&G's sole negligence.

3. Even if Mesa had produced evidence to support a finding that the sulfur dioxide release was due to P&G's sole negligence, Mesa is still required to defend P&G under the MOA.

4. Mesa was on the same notice of potential litigation arising from the release as P&G.

5. Mesa has produced no evidence to show that its ability to produce a defense to P&G's claim of indemnification and defense under the MOA was in any way prejudiced by the dismantling of the sulfur dioxide system.

6. P&G has not obtained any litigation advantage stemming from the dismantling of the sulfur dioxide system; since all parties have access to the same evidence, the "playing field" is level.

7. Consequently, Mesa cannot support its claim that P&G spoliated evidence.

8. Mesa has raised no genuine issues of material fact regarding its obligation to defend and indemnify P&G under the clear and unambiguous language of the MOA.